UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x
UNITED STATES OF AMERICA                :
                                        :
         - v. -                         :
                                        :
DOUGLAS SHYNE,                          :
NATASHA SINGH,                          :
    a/k/a "Dirty Rodrigues,"            :
NATHANIEL SHYNE,                        :
TOYBE BENNETT,                          :
    a/k/a "Dmitriy Makarevich,"         :   CASE NO.: 2:06mj108
    a/k/a "Dmitriy Makervish,"          :
    a/k/a "Eduarado Rodrigues,"         :   Judge Kenneth M. Karas
    a/k/a "Cecilio Pena,"               :
ROBETO MONTGOMERY,                      :
EPHRAIM RICHARDSON,                     :
NARESH PITAMBAR,                        :
JASON WATLER,                           :
STEVEN RIDDICK,                         :
NATHANIEL ALEXANDER, and                :
TIMOTHY MONTGOMERY,                     :
                                        :
         Defendants.                    :
---------------------------------------x

**VIRGINIA DEFENDANTS TIMOTHY MONTGOMERY, STEVEN RIDDICK, AND NATHANIEL ALEXANDER'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR SEVERANCE**

Defendants Timothy Montgomery, Steven Riddick, and Nathaniel Alexander hereby submit their reply to the government's opposition to their Motion for Severance. This Court should grant the Motion for Severance pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure because the various factors and a consideration of the totality of the circumstances weight in favor of severance. *United States v. Carrasco*, 968 F.Supp. 948, 951 (S.D.N.Y.

1997)(granting a motion to sever in a drug conspiracy case based on various factors including antagonistic defenses, evidentiary problems and spillover prejudice).[1]

    1. **<u>The eight (8) New York Defendants and the three (3) Virginia Defendants will have mutually antagonistic defenses at trial.</u>**

The Government argues that the Defendants do not meet the standard for "mutually antagonistic" defenses that require severance and submits that "mere 'finger pointing' by one defendant seeking to shift the blame to his co-defendant is not the sort of antagonism that commands a severance." (Government's Response p. 26). Before discussing the defenses that may arise between the eight (8) New York Defendants and the three (3) Virginia Defendants, a brief summary of the facts as to each set of Defendants may be helpful.

The Government has indicted eleven (11) individuals with a fraud conspiracy that began and operated in the State of New York. The eight (8) New York Defendants are either close friends or family members. (Superseding Indictment). The Government clearly concedes in their brief that the leaders and originators of this conspiracy are the New York Defendants, Douglas Shyne and Natasha Singh, who the Government contended in the superseding indictment "were in the business of procuring fraudulent checks." (Superseding Indictment, p. 3). It was these two individuals who obtained fraudulent checks. It was these individuals who, with the other six (6) New York Defendants, fraudulently altered checks by modifying the amounts, modifying the payees, stole people's identities, operated shell corporations, and even opened bank accounts in other people's names. These eight (8) New York Defendants also

---

[1] In its opposition, the government contends the Virginia Defendants' failure to file their severance motion until after the July 11, 2006 hearing somehow precludes this Court's consideration of any factors raised except prejudice by the April 2007 trial date. This contention is specious. The Virginia Defendants properly waited until the July 11 hearing to learn when trial would occur; when, because of the schedules of counsel for the New York Defendants, a trial date could not be set until April 2007, they raised their objections then at the hearing. This Court recognized the prejudice to the Virginia Defendants of such a late trial date, and invited a severance motion. But the motion is based on the totality of factors and circumstances including the antagonistic defenses, disparity of evidence, prejudicial spillover, etc., with the April 2007 trial date being the culminating event.

2

caused these fraudulent checks to be deposited into bank accounts and reaped the proceeds. Moreover, the actions of all eight (8) of the New York Defendants occurred over a substantial period of time. These fraudulent checks and these criminal transactions were separate and distinct from any allegation involving the three (3) Virginia Defendants. Moreover, these acts of identity theft and fraud occurred in New York not Virginia. The government has never nor will ever charge the Virginia Defendants with these separate criminal transactions, as there is no proof of involvement or knowledge by any Virginia Defendant.

What is confirmed by the government's response is that the slender reed linking these eight (8) New York Defendants to the three (3) Virginia Defendants is one individual—CC-1. The government avers that it has telephone and Fed Ex records possibly linking the Virginia Defendants to maybe one (1) or two (2) other New York Defendants. The government states "the evidence would show that the Defendants, who were aware that they were apart of a larger scheme, had direct communications not only with one another and with CC1, but also at least with Shyne, and that certain of the checks between New York and Virginia were routed through CC1, Shyne, and co-Defendant Toybe Bennett." (Government's Response p. 4). In other words, the government states that, at best, at least one of the Virginia Defendants communicated with Shyne and sent checks back to Shyne and Toybe Bennett.

The government fails to state whether it intends on calling any of these co-defendants as witnesses. Obviously, in a joint trial, the government cannot compel the testimony of any of the New York defendants, pursuant to the Fifth Amendment. Additionally, the government fails in its response to show to this Court how the Virginia Defendants "were aware that they were apart of a larger scheme…" These Virginia Defendants submit that such proof does not exist as each Virginia Defendant vigorously denies such association. Critically, proof of the Virginia

3

Defendants' knowledge cannot come from their New York co-defendants under the current posture of the case, and would not in any event, as the Virginia Defendants have no stated ties to New York, except through CC-1.

The government apparently expects to prove the mens rea of the Virginia Defendants by introducing a couple of telephone records and Fed Ex receipts. The crux of this case and the issue for the trier of fact is the Virginia Defendants' knowledge of the counterfeit nature of these checks. As disclosed to date, the government has only one witness to prove such knowledge, CC1. The phone records, at best and if they exist, do not show knowledge and, will only show, at most, that there were certain communications, but not what those communications involved.

As to the role of these Virginia Defendants, the government concedes that, at most, Timothy Montgomery, Steve Riddick, and Nathaniel Alexander merely presented fraudulent checks that had previously been altered by one (1) or more of the eight (8) New York Defendants. There will be a complete disparity of evidence that will be required at the trial of the eight (8) New York Defendants. The evidence introduced against the New York Defendants will include identity theft, proof that they opened factitious accounts, proof that they opened shell corporations, proof that they altered check amounts and altered payee information, versus the trial of the three (3) Virginia Defendants, who merely deposited checks into their own personal or business accounts over a brief 2-3 month period.

It will be undisputed that these Virginia Defendants obtained checks that had been previously altered fraudulently, and deposited such checks into their personal and/or business banking accounts. The issue for the trier of fact will be at the time of their deposit, did these Virginia Defendants' know that these checks were counterfeit? Therefore, the Virginia Defendants' defense at trial will be not that there was no fraudulent check scheme by the New

4

York Defendants, but that they, like other recipients of the checks who have not been indicted, are victims of a sophisticated fraud and New York money laundering operation. Contrary to the government's assertions, this is not merely a "fingerpointing " or hypothetical conflict, it is an absolute antagonists defense posture to the New York Defendants. The Virginia Defendants are acknowledging that there was a conspiracy, but asserting they were victims, not participants, therein. Moreover, the high profile nature of both Tim Montgomery as a world class sprinter and Steve Riddick as a world class trainer make them perfect victims for crooks, thieves and CC-1, who is a repeated convicted felon.

The Virginia Defendants' position is completely antagonistic to whatever defense the eight (8) New York co-defendants can devise. To a certain extent, the government is correct that these Virginia Defendants must speculate as to the New York defendant's defense at trial. The Virginia Defendants have not been provided with their statements or their discovery. Nevertheless, what is apparent to date is that, unlike the Virginia Defendants, these eight (8) New York defendants are anything but victims. The New York Defendants each played a crucial role in obtaining stolen identities, altering check amounts, altering payees and/or opening up fictitious accounts. Events in which the government concedes these Virginia Defendants knew nothing about and for which the government has no evidence showing their knowledge or culpability. Respectfully, the government's opposition largely ignores these critical issues, and actually highlights the important factual distinctions that illustrate that each set of defendants have mutually antagonistic defenses which require severance.

    **2.** **These Defendants are merely peripheral in the daisy chain conspiracy and different evidence will be presented as to them.**

The Government attempts to argue that these Virginia Defendants were not "peripheral" to the conspiracy and that the amounts of the counterfeit checks deposited by the Virginia

5

Defendants defeat the Virginia Defendants' "marginality" argument. (Government's Response, p. 16). First, despite what the government posits, it must be recognized that there only two (2) checks presented by the three (3) Virginia Defendants ever cleared. Eight (8) checks were altogether presented to various banks, but the actual loss only includes the two (2) checks that cleared. These proceeds total not in the millions, as argued by the government, but in the thousands. Moreover, the mere fact that the Virginia Defendants deposited eight (8) checks does not address the argument that the Virginia Defendants were peripheral to this conspiracy, particularly as the checks were all presented over a 2-3 month span.

Second, as the government concedes, it was the eight (8) New York Defendants who were in the business of stealing checks, altering checks, stealing identities, and opening bank accounts in other people's names that make these Virginia Defendants peripheral. At best, the Virginia Defendants were the last element in the chain by presenting a few checks to the banks. As set forth in their opening brief and Section 1, supra, the Virginia Defendants have no link to any New York Defendants but CC-1. Critically, this is not a hub and spoke conspiracy, but a daisy chain, with no connection between the Virginia Defendants and the New York Defendants. Moreover, the Virginia Defendants presented the checks to their own personal or business bank accounts, unlike the eight (8) New York Defendants who created fictitious businesses and stole identities in an effort to get the fraudulent checks as far away from their own identities as possible. This evidence shows that the vast majority of preparation, planning and scheming occurred in New York and not Virginia. The government's response fails to distinguish the case law cited by the Virginia Defendants. E.g., *United States v. Gallo*, 668 F.Supp. 736 (E.D.N.Y. 1987)(finding severance of the "peripheral" defendants justified where severed defendants were only involved in "discrete and finite schemes" and "should not be burdened with the stigma of

those more actively involved"). The admittedly different role of the Virginia Defendants in the conspiracy renders the Virginia Defendants status as "peripheral," and cuts strongly in favor of their severance. Fed.R.Crim.P. 14(a).

      **3.**      **<u>The Spillover prejudice is real and warrants severance.</u>**

The government submits "it is noteworthy that the Defendants do not specify the type of evidence that would be inadmissible against them in a severed trial, this is likely so because all of the evidence would be admissible against the moving Defendant even if they were tried separately." (Government's Response, p. 20). That contention is flatly incorrect.

The Government has not yet provided its witness list nor provided any witness statements, except those of the respective Defendants. Without that important information, these Virginia Defendants cannot say with any certainty who will testify and what they will say. But it is plain that evidence of the apparent extensive criminal actions of the New York Defendants to establish and operate the conspiracy is not <u>per se</u> admissible against the Virginia Defendants, and is extremely prejudicial and irrelevant to the issues governing the Virginia Defendants—their knowledge of the status of the checks. A conspirator is responsible only for acts which are "reasonably foreseeable." <u>United States v. Martinez-Rios</u>, 143 F.3d 662, 674 (2nd Cir. 1998). In any trial, evidence of acts that are not reasonably foreseeable to these Virginia Defendants will not be admissible against them. For example, no discovery provided by the Government shows that the Virginia Defendants knew that someone's identity had been stolen, or that bank accounts were opened in other people's names or knew of the existence of shell corporations. Accordingly, any testimony about identity theft would be inadmissible against them but would be primary evidence against the eight (8) New York Defendants. This is clearly spillover

prejudice with a heightened risk that a jury could hold that evidence against the Virginia Defendants.

  **4.** **There is no prejudice suffered by the government in having two trials.**

The Government argues that a severance would prejudice it because it would have to call the same witnesses twice. This is incorrect given the distinct activities of the Virginia Defendants. The government's admission that this is a "daisy chain" conspiracy, rather than the "hub-spoke" conspiracy disspells its assertion. The Government will only need to present evidence of the length of the chain that includes the Virginia Defendants, and not those links that include the other eight (8) New York Defendants. Specifically, there will not need to be proof about stolen identities, fictitious bank accounts, etc. that have no bearing or relationship to the Virginia Defendants and were certainly not foreseeable to them. Indeed, as noted above, such evidence is inadmissible, but highly prejudicial to the Virginia Defendants.

Moreover, the government contended in its response that the only other New York Defendant who <u>may</u> have had actual, limited communication with one or more of these Virginia Defendants was Douglas Shyne. The other seven (7) New York Defendants thus had no communications with the Virginia Defendants. This shows how the case and the trial will be vastly different between the two sets of defendants and why severance is not only required for constitutional purposes, but for judicial economy.

  **5.** **Two shorter trials would be more efficient for the Court.**

Lastly, the Government fails to address the Virginia Defendants' contention regarding the difficulty of an eleven (11) Defendant trial. It would be much easier for this Court to hold a three (3) Defendant trial, followed by an eight (8) Defendant trial, although these defendants expect after their trial certain of the New York Defendants may plead guilty. In fact, two shorter

trials would consume less trial time because there would be far fewer openings, cross-examinations, and closings. Moreover, each trial will be focused on the distinct issues of that proceeding, and thus avoid the continuing objections, instructions, etc. from having to separate evidence between the two groups of defendants. These defendants can think of nothing less appealing than having eleven (11) consecutive cross examinations, not to mention how confusing the entire trial is likely to be to a jury. The Virginia Defendants submit that these practical considerations compel two shorter trials, which would actually be much easier for the Court, the Marshalls, and Court room personnel, rather than one mega trial involving all the Defendants.

**WHERE, FOR THE REASONS EXPRESSED HEREIN,** in their Original Motion, and at oral argument, Defendants Timothy Montgomery, Steven Riddick and Nathaniel Alexander respectfully request this Court grant their motion for severance and set the case against them for a jury trial in 2006, separate from the other Defendants, as well any other further and general relief that the Court deem appropriate.

Respectfully submitted,

**ATTY FOR TIMOTHY MONTGOMERY**

By: __s/_____
    Robert W. McFarland, Esq.
    McGuireWoods LLP
    101 W. Main Street, Suite 9000
    Norfolk, VA 23510
    757-640-3716

**ATTY FOR STEVEN RIDDICK**

By: __s/_____
    Bryan Henry Hoss, Esq.
    Davis & Hoss PC
    508 E. 5th Street
    Chattanooga, TN 37403
    423-266-0605

        **ATTY FOR NATHANIEL ALEXANDER**

By: ___s/_____
     Michael Fineman, Esq. (MF 0282)
     305 Broadway, 7th Floor
     New York, NY 10007

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 7th day of September, 2006, I caused a copy of the foregoing Virginia Defendants' Timothy Montgomery, Steven Riddick, and Nathaniel Alexander's reply to the Government's response to motion for severance to be served via Clerk's Notice of Electronic Filing upon the following attorneys, who are filing users in this case:

| | |
|---|---|
| Danya Perry, Assistant U.S. Attorney<br>United States Attorney's Office<br>One Saint Andrew Plaza<br>New York, NY 10007 | Denis Patrick Kelleher, Jr., Esquire<br>Kelleher & Dunne LLP<br>17 Battery Place, 11th Floor<br>New York, NY 10004 |
| Daniel Steven Parker, Esquire<br>Parker & Carmody, LLP<br>1350 Broadway, Suite 1400<br>New York, NY 10018 | Xavier Robert Donaldson, Esquire<br>Donaldson, Chilliest & McDaniel LLP<br>103 East 125th Street<br>New York, NY 10035 |
| George Robert Goltzer, Esquire<br>200 West 57th Street, Suite 900<br>New York, NY 10019 | Neil Stephen Cartusciello, Esquire<br>2 West Main Street<br>Mendham, NJ 07945 |
| David L. Lewis, Esquire<br>Lewis & Fiore<br>225 Broadway, Suite 3300<br>New York, NY 10006 | Thomas Hamilton Nooter, Esquire<br>Freeman Nooter & Ginsberg<br>30 Vesey Street, Suite 100<br>New York, NY 10007 |
| Harvey Fishbein, Esquire<br>61 Broadway, Suite 1601<br>New York, NY 10006 | Susan Vicki Tipograph, Esquire<br>350 Broadway, Suite 700<br>New York, NY 10013 |

s/ _____
Bryan H. Hoss

\4161384.1