

**U.S. Department of Justice**

United States Attorney
Southern District of New York

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 27, 2008

<u>By U.S. Mail and Fax</u>
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street, Room 533
White Plains, New York 10601

**MEMO ENDORSED**

    Re: <u>United States v. Timothy Montgomery, et al.</u>
          S4 05 Cr. 1067 (KMK)

Dear Judge Karas:

    As per the Court's order, enclosed please find a version of the Government's sentencing submission (without attachments) in the above-captioned case that has been redacted upon consultation with counsel for the defendant. If the redacted letter is acceptable to the Court, we respectfully request that it be filed.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
E. Danya Perry/Daniel W. Levy
Assistant United States Attorneys
Telephone: (212) 637-2434/-1062

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

cc: (by fax)
Timothy J. Heaphy, Esq.

SO ORDERED
_____
KENNETH M. KARAS U.S.D.J.
6/3/08

Having reviewed the ~~redactions~~ redactions, and having found that the parties' interest in them outweighs the First Amendment interests in access to sentencing filings, the Court respectfully requests that the Clerk docket the attached, redacted letter.



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 13, 2008

**To Be Filed Under Seal**

By U.S. Mail and Fax
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street, Room 533
White Plains, New York 10601

      Re:    United States v. Timothy Montgomery, et al.
              S4 05 Cr. 1067 (KMK)

Dear Judge Karas:

      The Government respectfully submits this letter in advance of the sentencing proceeding for defendant Timothy Montgomery, scheduled for May 16, 2008.[1] The Government writes, first, in support of its position that Montgomery is not entitled to any downward adjustment for acceptance of responsibility due principally to his commission of serious crimes while on release in this case. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Finally, the Government responds briefly to the arguments made in the submission filed today on behalf of the defendant. ("Def. Ltr.")

**A.    The Defendant Is Not Entitled To A Downward Adjustment For Acceptance Of Responsibility**

      The parties entered into a plea agreement in this case, which includes the following provision: "Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution *and subsequent conduct prior to the*

---

[1] The Government regrets its tardiness in the submission of this letter. Montgomery's arrest on April 30, 2008 in the Eastern District of Virginia occasioned some delay, and the Government awaited the defendant's submission prior to filing its response.

The Honorable Kenneth M. Karas
May 13, 2008
Page 2

*imposition of sentence,* a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a)."
See Plea Agreement at 2 (emphasis added). Because the defendant pleaded only the day before
trial, the plea agreement provided that an additional one-level reduction was not warranted,
pursuant to U.S.S.G § 3E1.1(b). Id. The parties further agreed that: (i) neither a downward nor
an upward departure from the Stipulated Guidelines Range [of 37 to 46 months] is warranted,"
and, "[a]ccordingly, neither party will seek such a departure or seek any adjustment not set forth
herein;" (ii) "a sentence within the Stipulated Guidelines Range would constitute a reasonable
sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a);"
and (iii) "neither party will seek a sentence outside of the Stipulated Guidelines Range." Plea
agreement at 3. However, the agreement provides that "*[n]othing in this Agreement limits the
right of the Government to seek denial of the adjustment for acceptance of responsibility . . .
should it be determined that the defendant has . . . committed another crime after signing this
Agreement.*" Id. at 3-4 (emphasis added).

As it is permitted to do under the parties' agreement, and consistent with the
recommendation of the United States Probation Office, see PSR ¶ 153 & p.47, the Government
respectfully seeks the denial of the two-point downward adjustment for acceptance of
responsibility due to the defendant's repeated commission of serious narcotics offenses following
the entry of his guilty plea.

1. **The Defendant's Post-Plea Criminal Conduct**

On April 30, 2008 – while released on bail and awaiting sentencing in this case – the
defendant was arrested in the Eastern District of Virginia on an Indictment charging him with
conspiracy to distribute more than 100 grams of heroin, in violation of Title 21, United States
Code, Sections 846, 841(a)(1) and 841(b)(1)(B)(i). The charge relates to Montgomery's sale
of approximately 111 grams of heroin to another individual over the course of four separate
occasions between August 2007 and April 2008. Each of the meetings with this individual
was surveilled, monitored, and consensually recorded by DEA agents, and two of the meetings
were videotaped as well. At each of those meetings, the purchaser of the heroin paid
Montgomery thousands of dollars in exchange for quantities of heroin. During these meetings,
Montgomery informed the purchaser that, in addition to heroin, he also had available for sale
multiple kilograms of cocaine. (The foregoing details were revealed at a bail hearing held in the
Eastern District of Virginia, at which the defendant was ordered detained pending trial).

The defendant made a number of incriminating statements following his arrest on the
narcotics charge. For example, Montgomery stated, in substance and in part, that: (i) he could
count the number of individuals to whom he had sold drugs in his head; (ii) ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
(iii) Montgomery's first job was as a runner and his second job was selling drugs; and

The Honorable Kenneth M. Karas
May 13, 2008
Page 3

(iv) he suggested that he was aware of the location of some $2 million worth of "dope." (A DEA report of those statements is attached hereto). It is the Government's understanding based upon discussions with counsel that Montgomery does not intend to dispute the veracity of the attached report.

2. **Discussion**

Under the Sentencing Guidelines, a sentencing court may reduce a defendant's offense level if he "*clearly* demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a) (emphasis added). A defendant who enters a guilty plea is not automatically entitled to an adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1, cmt. (n.3). Although a guilty plea, combined with truthful statements about the defendant's offense and other relevant conduct, is "significant evidence" of acceptance of responsibility, it can be outweighed by conduct that is inconsistent with acceptance of responsibility. Id. Among the factors a court may consider is the defendant's "voluntary termination or withdrawal from criminal conduct or associations." Id., cmt. (n.1(b)); see also United States v. Olvera, 954 F.2d 788, 793 (2d Cir. 1992) (reduction may be denied on the basis that the defendant has engaged in continuing criminal conduct). A district court's finding that a defendant has not accepted responsibility for his offense "will not be disturbed unless it is without foundation." United States v. Ortiz, 218 F.3d 107, 108 (2d Cir. 2000) (internal quotations omitted).

It is settled Second Circuit law that a defendant's commission of a second crime after pleading guilty to, and while awaiting sentencing for, a first offense, "is a relevant consideration in denying the acceptance-of-responsibility adjustment in selecting the sentence for that first offense." United States v. Rodriguez, 928 F.2d 65, 67 (2d Cir. 1991). "The second crime refutes the disavowal of future criminal activity implied by the guilty plea to the first crime." Id.; see also United States v. Fernandez, 27 F.3d 277 (2d Cir. 1997). A defendant's "continued involvement in criminal activity casts substantial doubt on the sincerity of a defendant's protestations of contrition, and a court is well within its discretion in considering such involvement in setting a defendant's sentence," provided that the other crimes have been proven at least by a preponderance of the evidence. United States v. Woods, 927 F.2d 735, 736 (2d Cir. 1991); see also United States v. Ortiz, 218 F.3d at 109 (affirming denial of acceptance points where sentencing court found that defendant had "manipulated the system" by using marijuana on multiple occasions despite representations that he would not do so if continued on release).[2]

---

[2] Montgomery's sentencing letter, of today's date, properly cites this line of Second Circuit cases, as well as two cases to the contrary decided by the Sixth Circuit Court of Appeals. Notably, every other circuit to have addressed this issue has held, consistent with the Second Circuit rule, that unrelated criminal conduct is relevant to a court's determination of acceptance of responsibility. See United States v. Prince, 204 F.3d 1021, 1023-24 (10th Cir. 2000); United States v. Ceccarani, 98 F.3d 126, 130-31 (3d Cir. 1996); United States v. Byrd, 76 F.3d 194, 196-97 (8th Cir. 1996); United States v. McDonald, 22 F.3d 139, 144 (7th Cir. 1994); United States

The Honorable Kenneth M. Karas
May 13, 2008
Page 4

Montgomery has utterly failed to accept responsibility in this case, in a number of different regards. First, Montgomery has refused to accept responsibility by repeatedly violating the law, █████████████████████████████████████████████████████████████████████████████████████ The mendacity and sheer audacity of this conduct are entirely inconsistent with any acceptance of responsibility.

Montgomery's loud exclamations of contrition are also belied by his subsequent conduct. In a widely publicized statement issued by Montgomery following his guilty plea proceeding, he stated: "I sincerely regret the role I played in this unfortunate episode . . . I have disappointed many people, and for that I am truly sorry. I look forward to moving past this event and being a positive influence in my community in the future." See, e.g., "Tim Montgomery Pleads Guilty in Fraud Case," A.P., 4/9/07; "Retired Sprinter Is Expected to GO to Prison for Fraud," NYT, 4/10/07 (attached). In his press release, Montgomery also emphasized his purportedly "minor role" in the conspiracy. Moreover, in his interview with the Probation Officer in this case, Montgomery "expressed remorse for his actions" and stated that he was "very angry" with himself for his conduct, which represented an "embarrassing moment" in his life. PSR ¶ 144. He further explained that he viewed his co-defendant, Steven Riddick as a father figure, from whom he had, unfortunately, taken some "wrong advice." Id. Montgomery's expressions of remorse and shame ring deafeningly hollow, in light of the fact that, after his guilty plea, Montgomery promptly returned to Virginia and began violating the law, in what is no doubt yet another "unfortunate episode" for him. Even after Montgomery's self-flagellation for his "embarrassing conduct," as reported in the PSR, he continued to traffic narcotics until his arrest in April 2008.

Further, not only are Montgomery's expressions of remorse empty, but his statements reveal disturbing factual distortions that are additionally inconsistent with acceptance of responsibility. Montgomery's public statement that he played a "minor role" and his suggestion to the Probation Officer that he was somehow swayed by Riddick are stunningly false. As the Court is well aware from the evidence presented at the trial of Montgomery's co-defendants, it was Montgomery who brought others into the conspiracy, including Riddick, Alexander, and Charles Wells. Indeed, Montgomery admitted in a Government proffer that he induced Riddick to deposit the first counterfeit checks because Montgomery did not wish to expose himself to investigative scrutiny, and he likewise admitted that he used Charles Wells's accounts because he

---

v. Pace, 17 F.3d 341, 343 (11th Cir. 1994); United States v. O'Neil, 936 F.2d 599, 600-01 (1st Cir. 1991); United States v. Watkins, 911 F.2d 983, 984-85 (5th Cir. 1990)

The Honorable Kenneth M. Karas
May 13, 2008
Page 5

was "afraid" to use his own. Such recruitment of, and leverage over, others is ordinarily indicative of a leadership role, if anything – certainly not of a "minor role."³

In short, Montgomery's post-plea conduct is antithetical to any acceptance of responsibility. His expressions of remorse have been nothing but hollow, his efforts to mitigate his own conduct have been nothing but counterfactual, and ████████████████████ ████████████████████████████████████████. The Government respectfully submits that Montgomery has plainly failed to accept responsibility for his actions, and he should accordingly be denied any downward adjustment under U.S.S.G. § 3E1.1(a). Accordingly, consistent with the calculations in the PSR, the Government submits that Montgomery's Sentencing Guidelines range is properly 46 to 57 months' imprisonment. See PSR ¶ 200.

**REDACTED**

The Honorable Kenneth M. Karas
May 13, 2008
Page 6

**REDACTED**

The Honorable Kenneth M. Karas
May 13, 2008
Page 7

**REDACTED**

The Honorable Kenneth M. Karas
May 13, 2008
Page 8

# REDACTED

### C. The Factors Cited By The Defendant Do Not Mitigate His Conduct

In his May 13, 2008 submission, the defendant argues that his offense conduct is mitigated by "the relatively small amount of financial benefit which Mr. Montgomery obtained during the course of the conspiracy." See Def. Ltr. at 4. It is unclear how this factor is in mitigation of Montgomery's conduct. As he acknowledges, he is legally responsible for an intended loss of between $1,000,000 and $2,500,000. Montgomery tried repeatedly to deposit big-ticket checks and to cause others to do the same on his behalf. The fact that certain of the banks in question were able to detect the fraud before the conspirators could withdraw more of the illicit proceeds certainly should not redound to Montgomery's credit or benefit. Nor, as he suggests, see Def. Ltr. at 5, is his culpability properly gauged by his proportionate take of the actual proceeds, which was merely the result of dumb luck.

Montgomery also requests leniency on the grounds that none of the people with whom he discussed the fraud scheme (namely, Steve Riddick, Charles Wells, and Marion Jones) "discouraged Mr. Montgomery from participating in the scheme." See Def. Ltr. at 5. This is a non-starter. Montgomery was the one who brought the idea to the table and who recruited others into the scheme. It is clear from the evidence at trial that Montgomery was the instigator who recruited Riddick to join the scheme. And he certainly did not seek Wells's advice and counsel; rather, Montgomery used Wells, just as he used Riddick, because, as Montgomery admitted in a proffer with the Government, Montgomery was "afraid" to use his own accounts for fear of exposure. As for Marion Jones, it is noteworthy that, when he first asked her opinion about the matter, "she really didn't say nothing at all." PSR ¶ 138. Indeed, according to Montgomery's mother, Marjorie Montgomery (who was present for that discussion), Mrs. Montgomery explicitly advised her son against any involvement in such a scheme and Jones actually seconded that Montgomery should heed his mother's good advice. Clearly, Jones later did acquiesce to the scheme, but there is no basis for the claim that Montgomery viewed Jones's initial response as "permission" to go forward with the scheme. Def. Ltr. at 7.

The fact is that Montgomery ignored his own mother's advice, and instead recruited others to join him and, he hoped, take the fall for him. Montgomery has it exactly backwards: but for him, none of the other participants ever would have gotten involved in this scheme. Far from mitigating his conduct, Montgomery's hand in bringing his close compatriots into this conspiracy is a significant black mark against him.

The Honorable Kenneth M. Karas
May 13, 2008
Page 9

    D.    **Conclusion**

Consistent with the foregoing, as well as with the parties' plea agreement, the Government respectfully requests that the Court deny any downward adjustment for acceptance of responsibility and sentence Montgomery within the applicable Guidelines range of 46 to 57 months' imprisonment.



                                               Respectfully submitted,

                                               MICHAEL J. GARCIA
                                               United States Attorney

                            By: _____
                               E. Danya Perry/Daniel W. Levy
                               Assistant United States Attorneys
                               Telephone: (212) 637-2434/-1062

cc:    Timothy J. Heaphy, Esq. (by fax)